**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

|  |  |  |
|---|---|---|
| GARDELL HUNT, | : | |
| Petitioner, | : | Civil Action No. 14-6024(RMB) |
| v. | : | **OPINION** |
| STEPHEN D'ILIO, *et al.*, | : | |
| Respondents. | : | |

**BUMB**, District Judge

This matter comes before the Court upon the Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (Am. Pet., ECF No. 8) filed by Petitioner Gardell Hunt ("Hunt"), an inmate confined in New Jersey State Prison in Trenton, New Jersey. Respondent filed an answer opposing habeas relief (Answer, ECF No. 16), and Hunt filed a reply.[1] (Reply, ECF No. 17.) Pursuant to Federal Rule of Civil Procedure 78, the Court will determine the claims presented in the amended petition on the written submissions of the parties.

---

[1] Hunt's reply brief addresses claims that were not raised in his amended petition and are therefore not considered here. See Rules Governing § 2254 Cases, Rule 2(c) ("[t]he petition ... shall specify all the grounds for relief available to the petitioner ... and state the facts supporting each ground.")

1

I.  PROCEDURAL HISTORY

On July 12, 2005, Hunt was convicted by a jury in Superior Court, Camden County, New Jersey, for murder [Count 1], possession of a weapon for an unlawful purpose [Count 2], and unlawful possession of a weapon [Count 3]. (Verdict Sheet, ECF No. 16-3.) The trial court sentenced Hunt to a 45-year term of imprisonment with 85% parole ineligibility on Count 1; a 5-year concurrent sentence with a 3-year parole ineligibility term on Count 2, and a 5-year consecutive sentence on Count 3. (JOC, ECF No. 16-4.)

Hunt appealed his conviction and sentence. On December 12, 2007, the Appellate Division affirmed his conviction but remanded to the trial court for resentencing. (App. Div. Opinion, ECF No. 16-11.) Upon remand, on January 4, 2008, the trial court amended the Judgment of Conviction by merging Counts 1 and 2, and imposing a concurrent sentence on Count 3. (Am. JOC, ECF No. 16-12.)

Hunt then filed a notice of appeal and a petition for post-conviction relief ("PCR"). (Notice of Appeal, ECF No. 16-20; PCR Pet., ECF No. 16-17.) His PCR petition was dismissed without prejudice pending his appeal, but Hunt withdrew his appeal and his PCR petition was reinstated. (PCR Court Order, ECF No. ECF 16-19; Letter to Withdraw Appeal, ECF 16-21; App. Div. Order, ECF No. 16-22.) The PCR Court denied relief on December 9, 2010. (PCR Court Opinion and Order, ECF No. 16-26.) Hunt filed a notice of appeal on April 4, 2012. (Not. of Appeal, ECF No. 16-27.) On November 8,

2013, the Appellate Division affirmed the PCR Court. (App. Div. Opinion, ECF No. 16-32.) Hunt filed a petition for certification in the New Jersey Supreme Court on November 25, 2013. (Pet. for Cert., ECF No. 16-34.) The New Jersey Supreme Court denied the petition on June 5, 2014. (N.J. S. Ct. Order, ECF No. 16-36.)

Hunt filed his original petition for writ of habeas corpus under 28 U.S.C. § 2254 on September 26, 2014. (Pet., ECF No. 1.) He filed the instant amended petition on July 24, 2015. (Am. Pet., ECF No. 8.)

II. BACKGROUND

The factual background in this matter was summarized by the New Jersey Superior Court, Appellate Division upon Hunt's direct appeal. (App. Div. Opinion, ECF No. 16-11.) In the early evening of November 25, 2002, sixteen-year-old Markquise Hill was shot to death. Markquise's older brother, Anthony Hill, had a fight with Hunt several weeks earlier. Hunt fought with Anthony because Anthony owed Hunt fifty dollars for a drug transaction. The State's theory of the case was that Hunt shot Markquise either in retaliation for Anthony's failure to pay the debt or in a case of mistaken identity.

The trial court held a pre-trial hearing on whether the State could introduce evidence of the altercation between Hunt and Anthony Hill. The court ruled that the evidence was admissible but a limiting instruction was required.

Hunt presented an alibi defense that he was at a restaurant celebrating his sister's birthday with his mother, sister, girlfriend and several others, and he did not return to Camden until after the shooting had taken place. The jury, by finding Hunt guilty of murder, rejected this defense.

Hunt raised three grounds for relief in his amended petition, challenging admission of evidence of prior wrongs and alleging ineffective assistance of trial and appellate counsel for failing to have evidence of prior wrongs excluded. (Am. Pet., ECF No. 8 at 7-8.)

III. DISCUSSION

    A.    <u>Standard of Review</u>

28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in U.S. Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from U.S. Supreme Court precedent and arrived at a different result than the Supreme Court. Eley v. Erickson, 712 F.3d 837, 846 (3d Cir. 2013) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). The phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta" of the U.S. Supreme Court's decisions. Williams, 529 U.S. at 412. An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. Eley, 712 F.3d at 846 (quoting Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)).

B. Analysis

Hunt's three grounds for relief overlap, and the Court refers to the facts Hunt offered in support to distinguish his legal claims.

1. Grounds One and Two

In Ground One, Hunt argued that his right to due process under the Fourteenth Amendment was violated when the trial court permitted presentation of evidence, to show motive for murder, of an altercation between Hunt and the victim's brother that occurred two weeks before the murder, and stemmed from their prior drug dealings. (Am. Pet., ECF No. 8, Ground One.) Similarly, in Ground

5

Two, Hunt asserted his right to due process under the Fourteenth Amendment was violated when the trial court and the Appellate Division misapplied state law in determining that prior wrongs evidence was admissible under New Jersey Rule of Evidence ("NJRE") 404(b). (Id., Ground Two.)

Respondents note that Hunt raised Ground One on direct appeal, by presenting it in his *pro se* supplemental brief. (Answer, ECF No. 16 at 29.) The Appellate Division appeared to be addressing Hunt's *pro se* brief when it discussed his argument that prejudice from the 404(b) evidence outweighed its probative value. (App. Div. Opinion, ECF No. 16-11 at 9.)

Respondents assert that the Appellate Division upheld the trial court's admission of the NJRE 404(b) evidence for the following reasons. (Answer, ECF No. 16 at 29.) First, the challenged evidence clearly went to Hunt's motive, and fit within the narrow focus of NJRE 404(b), "to show why a defendant engaged in a particular, specific criminal act." (Id.) Second, the Appellate Division stated it carefully considered Hunt's argument that the prejudice from the evidence outweighed its probative value. (Id.) Third, the Appellate Division found that the evidence was not inflammatory, and it was not presented to the jury in a manner to raise their emotions. (Id.) The Appellate Division was also persuaded by the fact that the trial court gave limiting

6

instructions on four separate occasions, including when the evidence was received and upon final charge to the jury. (Id.)

Respondents also contend that habeas review does not generally extend to state court rulings on the admissibility of evidence. (Answer, ECF No. 16 at 32.) Moreover, Respondents assert the state court record shows that Hunt received a fair trial and his constitutional rights were not infringed. (Id.)

It is true that habeas review does not encompass alleged violations of state evidentiary rules. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Therefore, Ground Two of the Amended Petition fails to state a cognizable claim for habeas relief and is denied.

Ground One, however, is different because Hunt raised a federal due process claim in his *pro se* supplemental brief on direct appeal, alleging that admission of prior bad acts evidence violated his Fourteenth Amendment right to a fair trial. (Answer, ECF No. 16 at 29; *Pro Se* Supplemental Brief, ECF No. 16-9 at 2-6.) Respondents do not contend that Hunt failed to exhaust this federal due process claim. Therefore, habeas review is proper.

For admission of prior bad acts to violate the Fourteenth Amendment Due Process Clause, the admission of the evidence, "in the context of the entire trial" must be sufficiently prejudicial. Allison v. Superintendent Waymart SCI, 703 F. App'x 91, 97 (3d Cir. 2017) (per curiam) (quoting Donnelly v. DeChristoforo, 416

7

U.S. 637, 639 (1974)). The Due Process Clause has limited operation, protecting a narrowly defined "fundamental fairness." Dowling v. U.S., 493 U.S. 342, 352-53 (1990) (quoting U.S. v. Lovasco, 431 U.S. 783, 790 (1977)). Thus, courts

> are to determine only whether the action complained of ... violates those 'fundamental conceptions of justice which lie at the base of our civil and political institutions,' *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 341, 79 L.Ed. 791 (1935), and which define 'the community's sense of fair play and decency,' *Rochin v. California*, [342 U.S. 165, 173, 72 S.Ct. [205,] 210 [1952].

Id. To succeed on a habeas claim, the petitioner must identify facially contradictory Supreme Court precedent or precedent that obviously forbids the admission of the challenged testimony. Allison, 703 F. App'x at 97-98.

In his *pro se* supplemental brief on direct appeal, Hunt argued that admission of the prior bad acts testimony violated his right to a fair trial because the inflammatory and prejudicial nature of the evidence outweighed its probative value. (*Pro Se* Supplemental Letter Brief, ECF No. 16-9 at 5, 14.) The Appellate Division rejected this argument, stating the evidence was not inflammatory in nature, and it was not presented in a manner to raise the emotions of the jurors. (App. Div. Opinion, ECF No. 16-11 at 9.) The Appellate Division noted the trial court gave a carefully

crafted limiting instruction to the jury on four occasions, and a jury is presumed to have followed the court's instructions. (Id.)

Hunt has not identified facially contradictory Supreme Court precedent or Supreme Court precedent that obviously forbids admission of the evidence that he had a fight with the victim's brother over a drug deal, to show motive of retaliation or mistaken identity.

Dowling is the clearly established Supreme Court precedent on whether admission of prior bad acts violates the Due Process Clause. In Dowling, the defendant was convicted of bank robbery upon his third trial. 493 U.S. at 344. Evidence showed that a man wearing a ski mask and armed with a small pistol robbed a bank teller, ran from the bank, and commandeered a taxi to escape. Id. In the taxi, the bank robber pulled off his ski mask, and an eyewitness then identified him as Dowling. Id. Other witnesses testified they saw Dowling driving the hijacked taxi shortly after the bank robbery. Id.

At Dowling's third trial, over his objection, the Government called a witness, Ms. Henry, who testified that a man wearing a knitted mask with cutout eyes, carrying a small handgun, entered her home with another man two weeks after the bank robbery. Id. She struggled with and unmasked the intruder, whom she identified as Dowling. Id. at 345. The District Court instructed the jury that Dowling had been acquitted of robbing Henry, emphasizing that

9

the limited purpose for admitting the testimony was to show that the mask worn and gun were similar to that used in the bank robbery, and to link the man who accompanied Dowling into Henry's home as the person who was supposed to drive the getaway car after the bank robbery. Id. at 346.

In Dowling, the Supreme Court addressed whether introduction of the 404(b) evidence was so extremely unfair that it violated "fundamental conceptions of justice." Id. at 352 (quoting Lovasco, 431 U.S. at 790.) It held that admission of the evidence did not violate due process because the evidence was "at least circumstantially valuable in proving [Dowling's] guilt"; Dowling had the opportunity to refute the truthfulness and the significance of the testimony; and the trial court's authority to exclude potentially prejudicial evidence adequately addressed the possibility that the jury would convict based on inferences drawn from the acquitted conduct. Id. at 353.

Here, the Appellate Division found on direct appeal that the evidence was probative of Hunt's motive to kill Anthony Hill's brother. (App. Div. Opinion, ECF No. 16-11 at 8.) The Appellate Division agreed with the trial court that proof of motive could constitute circumstantial evidence that the defendant acted purposely or knowingly. (Id. at 6.) Further, the assault on Anthony Hill occurred close in time to the shooting of Markquise

Hill, and Hunt admitted to his altercation with Anthony Hill at the time of his arrest. (Id.)

The state court record supports the Appellate Division's conclusion that the evidence was not inflammatory or presented in a way to evoke the emotions of the jurors. A witness, Mr. Robinson, testified that about two weeks before the victim was shot, he saw Hunt approach Anthony Hill and ask for the money he owed. (Trial Transcript, ECF No. 16-38 at 119-7 to 120-4.[2]) When Hill said he didn't have the money, Hunt wanted to fight and started swinging. (Id.) After the short fight, Hunt hopped in a car and drove off. (Id.)

Anthony Hill also testified about the incident. He testified that he sold drugs for Hunt in November 2002. (Id. at 147-9 to 149-24.) About two weeks before Anthony's brother was shot, Hunt had pulled up to Anthony in a car, got out of the car, and started punching and kicking him. (Id.) Hunt told Anthony to pay him the $50 that he owed for drug money. (Id.) Anthony testified that he owed the money and had not paid it. (Id.) Hunt did not otherwise threaten Anthony during this fight. (Id.) He just got in his car and left. (Id.)

A redacted tape of Hunt's statement to Sergeant Frank Falco of the Camden County Prosecutor's Office was played to the jury.

---

[2] The Court cites the original page numbers of the trial transcript followed by the line numbers.

(Transcribed Statement of Gardell Hunt, ECF No. 16-29 at Da102-166.) Hunt admitted he was a drug dealer and that Anthony Hill sold drugs for him. (Id. at Da137-140.) He also admitted to having a physical altercation with Anthony several weeks before his brother's murder because Anthony owed him $50 for a drug sale. (Id.)

The record shows the trial court instructed the jurors that evidence of Hunt's drug dealing activity and his fight with Anthony Hill could not be used to show that Hunt had a disposition to do wrong, and must therefore be guilty. (Trial Transcript, ECF No. 16-38 at 117-7 to 119-3, and 144-21 to 147-5; ECF No. 16-40 at 13-14 to 14-6; and ECF No. 16-42 at 23-2 to 25-22.) Before any weight could be given to the evidence at all, the jury must be satisfied that Hunt committed the prior wrong. (Id.) If the jury found the prior wrong was committed, they could consider it to demonstrate motive, but it was up to the jury to determine whether it in fact demonstrated motive. (Id.) The evidence could not be used to conclude that Hunt had a tendency to commit crimes, and therefore, he must have committed the crime charged or to conclude that he was a bad person. (Id.)

Finally, after reviewing the context of the entire trial, the evidence was not so prejudicial as to violate the fundamental conceptions of justice. Several eyewitness saw Hunt shoot the victim, and they had no difficulty identifying him as the shooter.

(Trial Transcript, ECF No. 16-38 at 79-18 to 79-24 and 80-2 to 83-22; Trial Transcript, ECF No. 16-39 at 46-8 to 48-17.) Further the motive was corroborated by the testimony of Hunt's cellmate, that Hunt told him he did not mean to shoot "the boy" but meant to get his brother who owed him money. (Trial Transcript, ECF No. 16-39 at 106-2 to 108-9.) Hunt's alibi defense was refuted by testimony that he could have been back on the street of the crime more than thirty minutes before the murder. (ECF No. 16-41 at 191-17 to 198-25.)

Given the substantial evidence supporting Hunt's conviction, and the limiting instructions by the trial court, there is no reason to conclude the jury convicted Hunt based on an emotional or otherwise improper response to hearing of his fight with the victim's brother over a drug deal. Therefore, the Appellate Division's determination of Hunt's federal due process claim was not contrary to nor an unreasonable application of clearly established Supreme Court precedent.

### 3. <u>Ground Three</u>

In his third and final ground for relief, Hunt argued that his trial and appellate counsel were ineffective because the trial court and Appellate Division incorrectly ruled that evidence of prior wrongs was admissible under NJRE 404(b). (Am. Pet., ECF No. 8, ¶12, Ground Three.) Respondents submit that Hunt raised a different basis for ineffective assistance of trial and appellate

13

counsel in his PCR-petition, that his counsel was ineffective in contesting the admissibility of "excited utterances" by Norris Robinson to Marion and Jennelle Hill shortly after the shooting. (Answer ECF No. 16 at 32-33.) Hunt did not raise the issue of counsel's ineffectiveness in challenging the admission of prior crimes evidence in his PCR appeal or his petition for certification to the New Jersey Supreme Court. (Id. at 33 citing Brief and Appendix on Behalf of Defendant-Appellant, ECF No. 16-28 and 16-29; Letter Pet. for Cert., ECF No. 16-34.)

Because Hunt did not raise the same ineffective assistance of counsel claims in his habeas petition as in his PCR appeal, Respondents contend Hunt's ineffective assistance claims are procedurally barred in state court, and procedurally defaulted for federal habeas purposes. (Answer, ECF No. 16 at 37.) The PCR Court found this claim was procedurally barred because it concerned issues that were adjudicated on the merits on direct appeal. (PCR Court Opinion, ECF No. 16-26 at 7-8.) Hunt's claims were cloaked as ineffective assistance of counsel but the underlying issue was admission of NJRE 404(b) evidence, which was raised and decided on direct appeal. (Answer, ECF No. 16 at 38.) Therefore, Respondents assert Hunt is barred by New Jersey Court Rules 3:22-3 and 3:22-5 from raising the issues in his PCR petition. (Id.)

New Jersey Court Rule 3:22-3 states that a PCR petition "is the exclusive means of challenging a judgment rendered upon

14

conviction of a crime. It is not, however, a substitute for appeal from conviction … and may not be filed while such appellate review or motion is pending." Rule 3:22-5 provides that "a prior adjudication upon the merits of any ground for relief is conclusive whether made in the proceedings resulting in the conviction or in any post-conviction proceeding brought pursuant to this rule or prior to the adoption thereof, or in any appeal taken from such proceedings."

Hunt challenged the admission of NJRE 404(b) evidence on direct appeal. He is, therefore, procedurally barred in the New Jersey state courts from raising ineffective assistance of trial and appellate counsel based on their failure to succeed in having the court exclude NJRE 404(b) evidence. See N.J. Ct. Rule 3:22-5. This Court, however, denies the claim on its merits. See Johnson v. Lee, 136 S.Ct. 1802, 1806 (2016) (citing Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (judicial economy might favor denial on the merits of procedurally defaulted claim).

Respondents contend that the ineffective assistance of counsel claims fail on the merits because the NJRE 404(b) evidence was properly admitted, and therefore counsel was not ineffective for failing to have the evidence excluded. Respondents are correct. To succeed on an ineffective assistance of counsel claim under the Sixth Amendment, a petitioner must establish a two prong test: (1) that his counsel's performance was so deficient that it fell below

15

an objective standard of reasonableness, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1994).

Hunt's appellate counsel[3] challenged admission of the NJRE 404(b) evidence, but the Appellate Division affirmed the trial court's ruling that the evidence was admissible. Hunt has not established that there is an argument against admission of the evidence that was not raised and would have been successful. Even if counsel had successfully excluded the evidence of Hunt's drug dealing and his fight with Anthony Hill, Hunt was likely to have been convicted based on eyewitness testimony by persons who knew Hunt and saw him shoot the victim. See Mathias v. Superintendent Frackville SCI, 876 F.3d 462, 477 (3d Cir. 2017) ("on habeas review, we may begin and, when dispositive, end with either of Strickland's two prongs.") Therefore, the failure to successfully challenge the admission of NJRE 404(b) evidence was not ineffective assistance of trial or appellate counsel. Therefore, Ground Three of the amended petition is denied.

IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be

---

[3] See Brief and Appendix of Defendant-Appellant In Supp. of Appeal of Conviction and Sentence, ECF No. 16-6.

taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

For the reasons discussed above, Petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a certificate of appealability.

V.  CONCLUSION

In the accompanying Order filed herewith, the Amended Petition for habeas relief under 28 U.S.C. § 2254 is denied.


Dated: February 27, 2018

    s/Renée Marie Bumb
    **RENÉE MARIE BUMB**
    **United States District Judge**